IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CATHY A. MOONEY,
  Plaintiff,

v.          Case No. 3:11cv211/RV/CJK

MICHAEL J. ASTRUE,
Commissioner of Social Security,
  Defendant.

_____

## REPORT AND RECOMMENDATION

  This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b), and NORTHERN DISTRICT OF FLORIDA LOCAL RULES 72.1(A), 72.2(D), and 72.3, relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. §§ 401-1400v.  The case is now before the court pursuant to 42 U.S.C. § 405(g), for review of a final determination of the Commissioner of Social Security ("Commissioner") denying claimant's application for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401-34.

  Upon review of the record before this court, I conclude that the findings of fact and determinations of the Commissioner are not supported by substantial evidence. The decision of the Commissioner, therefore, should be reversed.    The recommendation for reversal here is based upon the shortcomings of the order, and should not be read to foreshadow the ultimate result in this case.  *See Harris v. Astrue*, 546 F. Supp. 2d 1267, 1283 (N.D. Fla. 2008) (reversing finding of no

disability because order on review failed to include claimant's fibromyalgia as a severe impairment, and failed to provide sufficient reasons for discrediting testimony of treating physician, but noting "whether [the] findings could otherwise be upheld (i.e., on the basis of the permissible reasons only) is not for this court to say").

## PROCEDURAL HISTORY

On February 4, 2008, Cathy A. Mooney (who will be referred to by name, as plaintiff, or as claimant) protectively filed an application for disability insurance benefits, alleging disability beginning May 22, 2006.   T. 105-14, 119.[1]   The application was denied initially and upon reconsideration.  T. 85-91.  Claimant filed a written request for hearing, and the hearing took place before an administrative law judge ("ALJ") on April 17, 2009.  T. 33-68.  In a decision dated May 12, 2009, the ALJ denied claimant's application for disability insurance benefits, finding Mrs. Mooney had not been under a disability within the meaning of the Social Security Act at any time through the date of the decision.  T. 23-32.

## FINDINGS OF THE ALJ

In the written decision the ALJ made several findings relative to the issues raised in this appeal:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2.  The claimant has not engaged in substantial gainful activity since May 22, 2006, the alleged onset date.

---

[1] The administrative record, as filed by the Commissioner, consists of eight volumes (doc. 5-2 through 5-9), and has 488 consecutively numbered pages.  References to the record will be by "T." for transcript, followed by the page number.

3.   The claimant has the following severe impairments: myfasicial[2] pain disorder and affective disorder.

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c) except for jobs that require frequent contract with others. In his consideration of plaintiff's alleged fibromyalgia, the ALJ wrote:

> Medical records document the claimant's history of complaint of multiple joint plans, thought to be fibromyalgia (Exhibits 6F and 7F).
>
> Dr. Le Thia Bach,[3] a treating source, reported on a Medical Sources Statement of Ability To Do Work Activities (physical) that the [claimant] had fibromyalgia preventing her form lifting or carrying more than 10 pounds; standing or walking longer than 2 hours total in an 8 hour day without experiencing pain or fatigue; sitting longer than 2 hours in an 8 hour day without experiencing pain to the point of distraction; sitting longer than 30 minutes without changes positions; standing longer than 30 minutes without changing positions; walking longer than 10 minutes at one time; and he indicated that she must walk around every 30 minutes during an 8 hour day; and have the opportunity

---

[2] This term, perhaps intended by the ALJ to read "myofascial," appears nowhere else in the ALJ's order.  "Myofascial" means "pertaining to or involving the fascia surrounding and associated with muscle tissue."   DORLAND'S POCKET MEDICAL DICTIONARY 572 (27th ed. 2004). "Myofascitis" refers to "inflammation of a muscle and its fascia." *Id.*  "Fascia" refers to "a sheet or band of fibrous tissue such as lies deep to the skin or invests muscles and various body organs." *Id.* at 333.

[3] The physician referred to by the ALJ as "Le Thia Bach" is correctly identified in the record as "Bach-Uyen Le Thi, M. D." *E.g.*, T. 308.  In this record, the doctor will be identified as "Dr. Bach-Uyen," because that is her name.

to change positions at will.  This physician contended that these limitations were caused by her 4/5 strength in her lower extremities and her neck, hips, and arms.  He also proposed that the claimant could only occasionally twist, never crouch or and only occasionally twist or bend and never crouch or climb stairs or ladders.  He also indicated that the claimant's abilities to reach, finger, feel, push or pull were affected, and that she would have to be absent from a job more than 3 days a month (Exhibit 8F).

Dr. Le Thia Bach reported on a subsequent Medical Source Statement Of Ability To Do Work (Physical) dated January 26, 2009, that the claimant could lift or carry no more than 10 pounds; stand or walk no longer than 2 hours in an 8 hour day; sit no longer than 2 hours in an 8 hour day; sit no longer than 10 minutes before having to change positions; standing no longer than 5 minutes without having to change positions; walk every 30 minutes for up to 10 minutes at one time; allowed the opportunity to change positions at will; lie down several hours during the day.  Dr. Bach indicated that these limitations were due to fatigue and muscle tenderness.  He[4] also indicated that her abilities to reach, finger, push or pull, handle, and feel, were affected and speculated that she would have to be absent from a job up to four days a month (Exhibit 17F).

The undersigned, for the following reasons, affords Dr. Lee Thia Bach's assessments no weight.

Dr. Bach reported on January 27, 2009 that the claimant had full range of motion in all joints despite complaints of pain.  Also, he reported that muscles were in coordination and no impairment of rapid alternating movements.  He reported that despite her complaints of swelling and pain, he found no edema in any joint.  These findings are similar throughout his examination of the claimant and contrary to Dr.

---

[4] As made clear throughout the medical chart and in the claimant's testimony, Dr. Bach-Uyen is a female.  *E.g.*, T. 49.  The ALJ refers to her in the masculine both in the hearing transcript and in the order.

Bach's assessments.  On November 21, 2008 the claimant indicated that the pain in her hands had been extensive (Exhibit 18F pages 1 and 2).

Dr. James M Brown, however, another long term treating source, reported on January 13, 2009, that the claimant had not been seen by him for 9 months and that his current musculoskeletal examination was normal with only mild osteoarthritis in her hands and feet.  He noted that she had been experiencing stress in her home life and recommended daily exercises.  Also noted is Dr. Brown's report of April 16, 2008, in which he excluded any inflammatory musculature disorder (Exhibit 19F).

As indicated, Dr. Bach's conjecture on the claimant's abilities to do work is based on her own subjective allegations and not objective findings[.]  Dr. Bach's work assessment and his actual medical findings are not congruent.  Also the claimant's own description of her daily activities is not reflective of the limitations and restrictions proposed by Dr. Bach.  She reported on the Function Report that she drives an automobile; she does housework goes shopping; washes loads of clothes; walks around the yard.  (Exhibit 4F).

T. 30-31.

Having made these observations, the ALJ decided plaintiff was able to perform her past relevant work as a bookkeeper.  Such work is classified as sedentary, and is, therefore, within the ALJ's assigned residual functional capacity.   T. 31.  Accordingly, the ALJ concluded, "The claimant has not been under a disability, as defined in the Social Security Act, from May 22, 2006 through the date of this decision (20 CFR 404.1520(f))."  Claimant challenges this conclusion.

<u>STANDARD OF REVIEW</u>

A federal court reviews a Social Security disability case to determine whether the Commissioner's decision is supported by substantial evidence and whether the

correct legal standards were applied by the ALJ.  *See Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").  Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  With reference to other standards of review, the Eleventh Circuit has said, "'Substantial evidence is more than a scintilla . . . .'"  *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 62 (11th Cir. 2010) (quoting *Lewis*, 125 F.3d at1439).  Although the ALJ's decision need not be supported by a preponderance of the evidence, "it cannot stand with a 'mere scintilla' of support."  *Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986).  The reviewing court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Secretary[.]'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  Nevertheless, a reviewing court may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).  In sum, review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record."  *Flynn v. Heckler*, 768 F.2d 1273, 1273 (11th Cir. 1985); *see also Getty ex rel. Shea v. Astrue*, No. 2:10–cv–725–FtM–29SPC, 2011 WL 4836220 (M.D. Fla. Oct. 12, 2011); *Salisbury v. Astrue*, No. 8:09-cv-2334-T-17TGW, 2011 WL 861785 (M.D.

Fla. Feb. 28, 2011).[5]  The recitation of medical and historical facts of this case, as set out below, is based upon my independent review.

The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(g), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, she is not disabled.

2.   If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.   If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

---

[5] The Eleventh Circuit speaks not only of independent review of the administrative record, but reminds us it conducts *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision.  *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 11th Cir. 2002).

4.   If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.   Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

Claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  *See* 20 C.F.R. § 404.1512.  The Eleventh Circuit has explained the operation of step five.  *See Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001) ("In practice, the burden temporarily shifts at step five to the Commissioner.  The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists.  The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.  *See Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987) ('The shifting of the burden of proof is not statutory, but is a long-standing judicial gloss on the Social Security Act')).").

Step five (or step four in cases where the ALJ decides a claimant can perform her past work) is generally where the rubber meets the road.  At that point, the ALJ formulates the all-important residual functional capacity.  Even where one or more severe impairments are established, the claimant must show that she cannot perform work within that residual functional capacity.  The ALJ establishes residual

functional capacity, utilizing the impairments identified at step two, by interpretation of (1) the medical evidence, and (2) the claimant's subjective complaints (generally complaints of pain).  Residual functional capacity is then used by the ALJ to make the ultimate vocational determination required by step five.[6]  "[R]esidual functional capacity is the most [claimant] can still do despite [claimant's] limitations."[7]  20 CFR § 404.1545(1).  Often both the medical evidence and the accuracy of a claimant's subjective complaints are subject to a degree of conflict, and that conflict leads, as in this case, to the points raised on judicial review by many disappointed claimants.

---

[6] "Before we go from step three to step four, we assess your residual functional capacity. (See paragraph (e) of this section.)  We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."  20 C.F.R. § 404.1520(a)(4).

[7] In addition to this rather terse definition of residual functional capacity, the Regulations describe how the Commissioner makes the assessment:

> (3) Evidence we use to assess your residual functional capacity.  We will assess your residual functional capacity based on all of the relevant medical and other evidence. In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity.  (See § 404.1512(c).)  However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources.  (See §§ 404.1512(d) through (f).) We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations. (See § 404.1513.)  We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons.  (See paragraph (e) of this section and § 404.1529.)[.]

20 C.F.R. § 404.1545(a)(3).

## FACT BACKGROUND AND MEDICAL HISTORY[8]

Plaintiff, Cathy Mooney, is married, and was fifty-two years old at the time of the hearing.  She has a valid Florida driver's license, and she drives.  T. 38.  She is a high school graduate.  T. 39.  Claimant worked until 2006, most recently as a bookkeeper, with K-mart.  T. 43-44.  Plaintiff left her job because she was "tired of working."  T. 44.  Elaborating upon this, plaintiff said she had started having headaches, and couldn't concentrate at work.  T. 48.  She was depressed, and had difficulty getting up in the mornings.  T. 48  She describes herself now as having fibromyalgia.  T. 45.

Plaintiff's primary care physician, and the one who produced the records plaintiff believes best support this claim, is Dr. Bach-Uyen.  Beginning in 2002 and continuing for several years, claimant had intermittent complaints of nausea, insomnia, and depression.  T. 315-45.  On July 6, 2004, she reported numbness and tingling in her arms and legs, with foot pain.  T. 314.  She reported muscle pain a few weeks later.  T. 313.  In December 2005, claimant reported chest pain with left arm pain, and Dr. Bach-Uyen assessed "neuralgia, neuritis, and radiculitis, unspecified," based upon the left arm tenderness.  T. 297, 295.  Muscle strength was normal, and on January, 23, 2006, claimant had no localized tenderness, no pain, and full range of motion.  T. 295.  On January 3, 2008, she reported aches in both legs "for quite some time," as well as insomnia.  The doctor assessed "myalgia and myositis, unspecified." T. 280.  The continued leg pain led, several days later, to an assessment

---

[8] Although intended to be thorough, and to provide an overview of claimant's history of care and treatment, this synopsis of medical evidence will be supplemented as called for in the Analysis section.

of "restless legs."  T. 279.  The chart for January 16, 2008, notes that the doctor discussed "the diagnosis of fibromyalgia."  T. 279.  Dr. Bach-Uyen decided to get "a second opinion of someone who does treat fibromyalgia readily," which led the doctor to make a referral to Dr. James Brown, a rheumatologist.  Also, on the same visit, Dr. Bach-Uyen noted, "probably in her current state she is most likely not able to work."  T. 279.

Beginning August 31, 2006, claimant had also been seen by Dr. Diego Freitas, a primary care doctor with First Physicians Group.  T. 254.  At her first visit to this physician, claimant presented with chest discomfort, and denied fatigue.  T. 254.  She also denied "joint pain, joint swelling, back pain."  T. 255, although the history notes "multiple joint pains, slowly worsening over the last several years."  T. 254.  Arms and legs were not tender to palpation.  T. 256.  Dr. Freitas recommended "lifestyle changes."  T. 257.  In early October 2006, Dr. Freitas assessed restless legs.  T. 252.  He found no pain or tenderness on musculoskeletal exam and testing.  T. 252.  On October 16, 2006, plaintiff returned "with now changing and still very odd syndrome."  T. 248.  Musculoskeletal and strength exams were normal.  T. 249-50.  In September 2007, claimant reported whole body, debilitating pain.  T. 238.  Musculoskeletal and motor testing showed no abnormalities.  T. 239-40.  At that visit Dr. Freitas assessed fibromyalgia, and decided to "ask rheumatology to [evaluate] for fibromyalgia and support or denounce possible diagnosis[.]"  T. 241.

On October 29, 2007, claimant reported to Dr. John Luetkemeyer for the evaluation.  T. 271-73.  She described generalized achiness in her bones and muscles, but not in the joints.  T. 271.  On examination, she had full range of motion, without

pain.  The doctor could not elicit soft tissue tender points.  Dr. Luetkemeyer assessed "arthralgias and myalgias, most likely related to her abnormal sleep pattern."  He saw no "significant physical findings to support a diagnosis of fibromyalgia at this time," nor any "clinical evidence of an underlying inflammatory arthropathy."  T. 272.  Dr. Luetkemeyer apparently believed that Dr. Freitas was the primary physician, as he forwarded the chart to Dr. Freitas.  T. 273.

On February 4, 2008, claimant began to develop her application for Social Security disability.  T. 105-14, 119.  The Disability Report shows that Mrs. Mooney alleged limited ability to work due to Lyme disease, restless leg syndrome, severe headaches, leg and arm pain, depression, arthritis in hands, and insomnia.  T. 123.

On April 7, 2008, claimant saw Dr. Brown, pursuant to the referral from Dr. Bach-Uyen.  She told Dr. Brown she had "pain all over, achiness, soreness."  T. 477.  Physical examination revealed full range of movement in the hands, wrists, elbows, and shoulders.  She had excellent grip strength, full range of movement of both hips, knees, and the small joints of the feet.  All strength tests were normal.  Heel and toe walking was normal.  Dr. Brown charted "constellation of symptoms compatible with fibromyalgia," and planned to emphasize "lifestyle changes."  T. 478.  He deferred final diagnostic and therapeutic decisions.  T. 478.

Claimant returned to Dr. Brown on April 16, 2008.  Studies revealed "no clinical indications of a systemic inflammatory musculoskeletal disorder."  Dr. Brown again noted symptoms compatible with chronic fibromyalgia.  All lab studies were normal.  Dr. Brown planned no medication changes, and "discussed and emphasized the lifestyle changes with exercise, weight loss and proper diet."  T. 476.  On January

1, 2009, Dr. Brown continued to note "symptoms compatible [with] chronic fibromyalgia."  She was on Mirapex, Lyrica, Cymbalta, Trazodone, and "limited" Lortab.  A musculoskeletal examination was "quite normal," although claimant had mild osteoarthritis throughout her hands, knees, and feet.  Dr. Brown again discussed dietary information and the need for daily exercises.  T. 475.

Through 2008, Dr. Bach-Uyen (or medical staff) continued to chart pain in the hands and feet, as well as sleeplessness.  T. 425, 424, 471.  In July 2008, claimant reported "generalized muscle tenderness," but had no swelling or joint erythema.  T. 471.  In October 2008, claimant reported sleeping better, pain better, waking up refreshed, but fatigued two hours later.  T. 467.  During this time, exams revealed 5/5 or 4/5 grip strength.  T. 467, 461.

On June 16, 2009, Dr. Bach-Uyen generated a "to whom it may concern" letter.  T. 20.  This letter said claimant's medical problems have gotten a lot worse.  The letter reported fibromyalgia as well as peripheral neuropathy, leading to multiple medications, causing claimant to be "severely sedated."  "Unfortunately," according to the doctor, "that makes her very fatigued during the day and she is unable to do any type of work at this time due to the medications as well as her condition worsening."

## ANALYSIS

On this appeal, plaintiff argues the "ALJ committed reversible error because the ALJ did not properly evaluate plaintiff's subjective fibromyalgia and her treating physician's opinions."  (Doc. 7, 5)  She concludes that the ALJ's wrong conclusions on these subjects mandates remand for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

Plaintiff maintains her "primary diagnosis is that of fibromyalgia," citing to page 279 of the record.  (Doc. 7, 3)  This page is Dr. Bach-Uyen's chart of January 16, 2008.  At that visit the doctor discussed "the diagnosis of fibromyalgia."  The doctor thought that plaintiff's collective symptoms "go along with that."  On that very day, however, the assessment was "myalgia, myositis, unspecified," suggesting that the doctor diagnosed pain, but actually did not assign a cause.  Dr. Bach-Uyen noted the earlier evaluation by Dr. Luetkemeyer, but was apparently unaware that Dr. Luetkemeyer could not definitively support a diagnosis of fibromyalgia, as noted above.[9]  At that visit Dr. Bach-Uyen made the referral to Dr. Brown, because she wanted the opinion of someone who actually treats fibromyalgia regularly.  T. 279.  Dr. Brown was to "advise as to diagnosis."  T. 279.  No findings on the record page relied upon by plaintiff actually support plaintiff's stark assertion of her primary diagnosis.  In fact, the diagnoses made by Dr. Bach-Uyen could only be characterized as myriad, over the years of treatment.  T. 277-390.  Dr. Brown, of course, reported fibromyalgia syndrome, but never assigned any work-related limitations, and found the musculoskeletal examination "quite normal."  T. 475.  Based upon my independent review of the record, I am thus unable to adopt plaintiff's implicit assertion that the diagnosis of fibromyalgia was essentially unquestioned.  This does not end the inquiry.

Plaintiff's specific legal argument takes issue with the ALJ's stated reasons for discounting Dr. Bach-Uyen's "assessments."  (Doc. 7, 6-9)  As I read it, the argument takes on several components.  Plaintiff does not directly make the "primary treating

---

[9] The ALJ does not seem to have devoted particular attention to Dr. Luetkemeyer's report.

physician" argument, *see Phillips v. Barnhart*, 357 F. 3d 1232, 1240-41 (11th Cir. 2004), so common in these cases, but her reliance on that is implicit.  Plaintiff notes that fibromyalgia lacks objective medical signs, and must be diagnosed on described symptoms.   She   argues further that her subjective complaints of pain must be considered, and that these complaints were credible.  I will first consider the ALJ's evaluation of Dr. Bach-Uyen's opinions, because plaintiff first argues that the ALJ stated reasons without substantial justification when he rejected the doctor's opinions. (Doc. 7, 6)

It is well-settled that "[t]he opinion of a treating physician is to be given substantial weight in determining disability."  *Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986); *see also Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) ("Absent a showing of good cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary.").  "'[G]ood cause' exists when the:  (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1240-41.  "The ALJ *must clearly articulate* the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error."  *Lewis*, 125 F.3d at 1440 (emphasis added); *see also MacGregor v. Bowen*, 786 F.2d. 1050, 1052 (11th Cir. 1986) ("There are specific rules that we follow in deciding whether evidence is substantial.  The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary.  The Secretary must specify what weight is given to

a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error."); SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996) ("[T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight".).

As support for allocating no weight to Dr. Bach-Uyen's opinions, the ALJ first noted the doctor's consistent assignment of full range of motion, despite complaints of pain.  The ALJ also noted that the doctor's own notes show no edema in any joint. These findings, according to the ALJ, are contrary to Dr. Bach-Uyen's assessments. The ALJ next noted that Dr. Brown performed a normal musculoskeletal examination and excluded any inflammatory musculoskeletal disorder.  For his final reason, the ALJ stated that Dr. Bach-Uyen's "conjecture" was based on claimant's own subjective allegations and not upon objective findings. T. 31.  These reasons are not sufficient to entirely reject the opinions and findings of a treating physician of some seven years.  Although I have noted above that Dr. Bach-Uyen's observations were not always consistent, her reports of pain, and her diagnoses of "myalgia, myositis" appear repeatedly, going back to at least 2005.  As of January 26, 2009, the chart notes "a lot of aches and pains" in claimant's arms, legs, and feet.  Claimant was still having insomnia, as well as numbness and weakness in her hands.  Muscle strength was noted as "reduced" in all muscles, although the doctor noted strength at 4/5, or twenty percent reduced.  T. 461.

As I have set out above, the claimant has not had a definitive, beyond all doubt, diagnosis of fibromyalgia, other than from Dr. Bach-Uyen.  Nevertheless, the ALJ should not have completely overlooked Dr. Bach-Uyen's repeated charting of pain, based upon plaintiff's complaints.  Similarly, the finding of full range of motion does not impeach the diagnosis of suspected fibromyalgia, and the ALJ makes no showing to the contrary in the order.  Some mention of the Eleventh Circuit's treatment of fibromyalgia is in order.

Along with several other circuits, the Eleventh has stated that fibromyalgia "often lacks medical or laboratory signs, and is generally diagnosed mostly on an individual's described symptoms." *Moore v. Barnhart*, 405 F. 2d 1208, 1211 (11th Cir. 2005).  The court has gone so far as to note that the "hallmark" of fibromyalgia is "a lack of objective evidence."  *Id*.  In *Somogy*, 366 F. App'x at 63-64, the court noted, with apparent approval, the observations of other circuit courts of appeal. "'[F]ibromyalgia patients present no objectively alarming signs.'"  *Id.* at 63 (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007)).  "'[T]here are no objective tests which can conclusively confirm [fibromyalgia][.]'"  *Id.* at 63-64 (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003)).  Further citing *Green-Younger*, 335 F.3d at 105-08, the court observed, "The lack of objective clinical findings is . . . insufficient alone to support an ALJ's rejection of a treating physician's opinion as to the claimant's functional limitations."  *Somogy*, 366 F. App'x at 64.  In the court's view, fibromyalgia is defined by chronic diffuse pain of unknown etiology and, owing to the lack of reliable laboratory tests, is notoriously difficult to diagnose.  *Id.* (citing *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)).

I am, of course, bound to follow these directives in evaluating plaintiff's claim that the ALJ erred by his focus on objective findings.[10]

   With these assertions in mind, I cannot conclude that Dr. Bach-Uyen's diagnosis and opinions are inconsistent with her chart.  The fact is that the doctor was a primary care physician, treating plaintiff for a myriad of complaints, some having nothing to do with the claimed disabling conditions.  The normal objective findings are not inconsistent with the diagnosis of fibromyalgia, supported by credence given by the treating physician to claimant's complaints.  Thus, the internal inconsistency urged by the ALJ was not a sufficient reason to show good cause under *Phillips*.

   Turning to Dr. Brown's chart, the reason assigned is also insufficient.  As noted above, Dr. Brown conducted a normal musculoskeletal examination.  The ALJ is, thus, correct in making this assertion.  Overlooked by the ALJ, however, is Dr. Brown's clinical impression of symptoms compatible with fibromyalgia and of fibromyalgia syndrome.  These observations were made at each office visit over a period of eight months.  T. 475-78.  Moreover, at the last visit, when Dr. Brown noted a quite normal musculoskeletal examination, he found no reason to "change diagnosis

---

[10] I am cognizant that not every judge within the boundaries of the Eleventh Circuit has internalized the view of that court:

   Disability cases now frequently involve one of these two relative newcomers to the lexicon of etiology, "fibromyalgia" and "chronic pain syndrome".  I do not believe that this circuit's case law supports a different standard of evaluation for them, however, nor are they in any way "universally recognized" as severe disabling conditions.

*Lee v. BellSouth Telecomms., Inc.*, 318 F. App'x 829, 841 n.1 (11th Cir. 2009) (Vinson, J., concurring *dubitante*).

or treatment approach." T. 475. The ALJ overlooked two factors in Dr. Brown's chart. First, Dr. Brown, although expressing himself in clinical language, did not question plaintiff's reports of a lengthy history of generalized pain syndrome. Second, and obviously, Dr. Brown charted fibromyalgia, in some form or another, at each visit. Recalling that plaintiff's primary care physician made the referral to Dr. Brown based upon Dr. Brown's experience with fibromyalgia, the ALJ has overlooked the specialist's diagnosis, in favor of the normal musculoskeletal examination. Apparently, Dr. Brown, the one who regularly treats fibromyalgia, did not find this normal exam sufficient to rule out fibromyalgia, or to alter plaintiff's medical treatment. Dr. Brown certainly suggested lifestyle changes, but did not indicate that compliance would be a silver bullet for all of plaintiff's pain.

The final reason given by the ALJ has to do with plaintiff's "subjective allegations." In effect, the ALJ found plaintiff to be entirely lacking in credibility with regard to reports of pain over four or five years. Evaluation of this reason brings into play the well-known, and interrelated, standards regarding pain and the credibility of the person reporting the pain.

Under controlling law, pain is treated, for purposes of the disability analysis, as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, unless "medical signs and laboratory findings . . . show . . . a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged

. . . ." *Accord* 20 C.F.R. § 416.929.  The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[11] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Adamo v. Comm'r of Soc. Sec.*, 365 F. App'x 209, 214 (11th Cir. 2010) (quoting *Wilson*, 284 F.3d at 1225); *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991).

"While both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself."  *Elam*, 921 F.2d at 1215.  The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence."  *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F. Supp. 2d 1245, 1259 (M.D. Fla. 2005).  The presence or absence of evidence to support symptoms of the severity claimed, though, remains a factor that can be considered.

---

[11] *Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir. 1986) (the case originally adopting the three-part pain standard).

*See Marbury*, 957 F.2d at 839-40; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

If the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain, he must do so explicitly and give reasons for that decision. *MacGregor*, 786 F.2d at 1054.  Where he fails to do so, the Eleventh Circuit has stated that it would hold as a matter of law that the testimony is accepted as true. *Holt*, 921 F.2d at 1223; *MacGregor*, 786 F.2d at 1054.  Although the Eleventh Circuit does not require an  explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  "The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." *Id.* (internal quotations and citations omitted).  And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. *Wilson*, 284 F.3d at 1225-26; *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F. Supp. 2d at 1259.

Underlying the *Hand* standard, as suggested above, is the need for a credibility determination concerning a plaintiff's complaints of pain.  Those complaints are, after all, subjective.  "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective

symptoms and complaints").[12]   People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others.  "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain.  This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ."  *Hand v. Heckler*, 761 F.2d 1545, 1548-49 (11th Cir. 1985).  It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence."  *Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984).  Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that.  The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.  Again, in evaluating these questions, I have conducted an independent review of the record.

The ALJ's reason for the pain/credibility finding is stated clearly in the order: "[T]he claimant's own description of her daily activities is not reflective of the limitations and restrictions proposed by Dr. Bach.  [Claimant] reported on the Function Report that she drives an automobile; she does housework; goes shopping;

---

[12] Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

washes loads of clothes; walks around the yard. (Exhibit 4F)."[13]  T. 31.   The document cited, read fairly, does not support the ALJ's conclusions.  Claimant said, for instance, that when she leaves home, she does so by driving or riding in a car.  T. 143.  The document does not, however, note the frequency or duration of the driving. The document also substantiates that plaintiff does housework.  T. 142-43.  She can do this "every couple of days," a factor not noted in the order.  T. 142.  She needs help to do this "most of the time" and becomes "really tired and [her] arms and legs hurt," when she attempts housework.  T. 142.  She does no yard work.  T. 143.  She goes shopping, as noted by the ALJ.  Not noted by the ALJ, however, is that she does this but once a week, and that shopping occupies one or two hours.  T. 143.  She does laundry, which she lumps in with house work.  As to laundry, she provides no specific information other than the general statement given for house work—every couple of days, and followed by arm and leg pain.  T. 142.  She did not say she "walks around the yard."  Instead, she reports she tries "to walk around [the] yard at least every couple of days."  T. 143.  Some other matters gleaned from the exhibit were not noted by the ALJ—she sleeps only a few hours a night, she cannot get dressed  "all at one time," she has to rest after dressing, she has to sit on the floor to dry her hair, and she cooks little "due to standing."  T. 141-42.  The ALJ's absolute rejection of Dr. Bach-Uyen's assessments was unsuccessful, to the extent it stood on the shoulders of an incomplete and inadequate credibility finding.  The ALJ should not have completely discounted plaintiff's subjective complaints, and then used this

---

[13] This item of evidence is actually Exhibit 4E.  T. 140-47.

to support his rejection of the Bach-Uyen opinions. I am thus led to conclude that the ALJ should also not have entirely overlooked the claimed effects of fibromyalgia.

This conclusion is not altered by the fact that the ALJ identified "myfasicial" pain disorder as a severe impairment. Despite having characterized that disorder as severe, the ALJ has made no further mention of the condition, and certainly has not factored the condition (whatever he meant by it) into the formulation of residual functional capacity.

The Commissioner should reconsider this case and the complete rejection of Dr. Bach-Uyen's opinions (based upon plaintiff's complaints of pain). This directive should not be read as favoring a particular outcome on remand. In another remand of a fibromyalgia case, this court observed:

> In the instant case, the court certainly cannot conclude that disability has been established without a doubt. Indeed, even if Plaintiff's fibromyalgia was found to be "severe," the evidence suggests that it was not disabling, but that decision is not for this court to make. Thus, the appropriate remedy is to reverse and remand this action for additional proceedings. Upon remand, Plaintiff's fibromyalgia must be reconsidered, and in the event it is again found to be non-severe, the reasons for that finding must be clearly articulated and must be supported by substantial evidence. Similarly, if Plaintiff's fibromyalgia is found to be severe but non-disabling, the ALJ must properly justify his findings on those issues, and the findings must be supported by substantial evidence.

*Harris*, 546 F. Supp. 2d at 1280.

Plaintiff's request for remand, rather than outright reversal, is consistent with *Harris*, and with other recent cases. Of late, the question of remedy in these cases has been discussed in this circuit with some regularity. *See, e.g.*, *Lawton v. Comm'r of*

*Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011) (remanding for further consideration where ALJ "failed to adequately explain the weight he afforded to the opinions of . . . treating and examining physicians"); *Howell v. Astrue*, No. 8:10–CV–2175–T–26TGW, 2011 WL 4002557 (M.D. Fla. Aug. 16, 2011) (remanding where ALJ failed to provide a meaningful explanation for credibility determination); *Freeman v. Astrue*, No. 1:10–cv–997–TFM, 2011 WL 2551181, at *3 (M.D. Ala. June 27, 2011) (remanding where ALJ "made a credibility determination, but did not adequately explain it"); *Carpenter v. Astrue*, No. 8:10-CV-290-T-TGW, 2011 WL 767652 (M.D. Fla. Feb. 25, 2011) (same).  These cases opt for remand in instances of error involving treating physician opinion and subjective pain testimony, and the same result is appropriate here.

Accordingly, it is respectfully RECOMMENDED:

1.   That the Commissioner's decision be REVERSED, and the matter REMANDED for further proceedings consistent with this Report and Recommendation.

2.   That the court reserve jurisdiction to award attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

At Pensacola, Florida, this 13th day of February, 2012.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).